Slip Op. 11-75

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CBB GROUP, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES**, <br><br> Defendant. | Before: Timothy C. Stanceu, Judge <br><br> Court Number: 10-00383 |

### OPINION AND ORDER

[Denying defendant's motion for judgment on the pleadings]

Dated: June 27, 2011

*Stein Shostak Shostak Pollack & O'Hara* (*Elon A. Pollack, Juli C. Schwartz*) for plaintiff.

*Tony West*, Assistant Attorney General, *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Karen V. Goff*), *Beth C. Brotman*, U.S. Customs and Border Protection, of counsel, for defendant.

Stanceu, Judge: This action arises from the importation by plaintiff CBB Group, Inc. ("CBB"), an importer of toys and other consumer goods, of "785 cartons of plush toys" that were the subject of Entry No. 735-0096303-5, which plaintiff filed in September 2010 at the port of Newark, New Jersey. Summons; Compl. ¶¶ 2, 13. United States Customs and Border Protection ("Customs" or "CBP") refused to release 574 of the 785 cartons and appears to have determined that the merchandise it did not release are "piratical" copies that infringe a registered copyright. Plaintiff filed a protest challenging the alleged exclusion of the goods from entry and contests before the court what it characterizes as a deemed denial of that protest. Compl. ¶¶ 26-27.

**Court No. 10-00383**                                                                                      Page 2

   Before the court is defendant's USCIT Rule 12(c) motion for judgment on the pleadings, which it filed along with a supporting memorandum on March 17, 2011.  Def.'s Mot. for J. on the Pleadings; Mem. in Supp. of Def.'s Mot. for J. on the Pleadings ("Def.'s Mem.").  Defendant argues that entry of judgment dismissing this action for failure to state a claim on which relief can be granted is required because, Customs having seized the merchandise at issue as piratical, the court lacks power to review the seizure determination or to order effective relief.  Def.'s Mem. 4-9.  The court denies this motion because plaintiff's claim falls within the subject matter jurisdiction of this court and because an award of appropriate relief, if warranted, is not precluded by the issuance of a seizure notice by Customs.

## I. B%CKGROUND

   The background of this action is described in the court's prior opinion and order denying defendant's motion to stay discovery pending the court's decision on defendant's Rule 12(c) motion.  *CBB Group, Inc. v. United States*, Slip Op. 11-50 (Apr. 28, 2011).  The court restates the facts relevant to its disposition of defendant's Rule 12(c) motion.

   The importation giving rise to this action occurred on or around September 7, 2010.  Compl. ¶ 13.  Customs released to CBB 211 cartons of the merchandise; the 574 cartons remaining in the custody of Customs were the subject of the protest and therefore are at issue in this proceeding.  Def.'s Mem. 2.  CBB filed its protest on November 19, 2010, Compl. ¶ 2, and commenced this action on December 21, 2010, *id.* ¶ 20; Summons.  Upon plaintiff's motion to expedite these proceedings, the Court of International Trade ("CIT") granted precedence to this action.  Order (Jan. 11, 2011) (Eaton, J.), ECF No. 11; USCIT Rule 3(g) (allowing an action to

Court No. 10-00383                                                                                              Page 3

"be given precedence . . . over other actions pending before the court, and expedited in every way . . .").

Customs issued to CBB a notice ("Seizure Notice") dated January 11, 2011, stating that Customs had "seized the merchandise described below at Newark, NJ on December 21, 2010." Def.'s Mem. exhibit 1. This notice described imported merchandise by quantity of pieces and domestic value but did not indicate how many cartons of each product were seized and did not identify the entry number of the imported merchandise.[1] *Id.* In telephone conferences, the parties have informed the court that, in response to the Seizure Notice, plaintiff elected judicial rather than administrative forfeiture proceedings and that no forfeiture proceedings are yet underway. *See also* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for J. on the Pleadings exhibit 3 ("Def.'s Reply") (plaintiff's Customs bond and election of remedies form). They also inform the court that Customs, subsequent to the filing of this action and the issuance of the Seizure Notice, issued a document purporting to be a denial of plaintiff's protest. On June 20, 2011, the parties filed a joint status report informing the court that as of that date, discussions between the parties have not resulted in a settlement of this action. Joint Status Report, June 20, 2011.

---

[1] This notice ("Seizure Notice") described the merchandise as
1,080 each Piratical Frog Pillow domestically valued at $15,140.17, 960 each Piratical Bumble Bee Pillow domestically valued at $14,053.11, 408 each Piratical Dolphin Pillow domestically valued at $5,972.57, 4,200 each Piratical Unicorn Pillow domestically valued at $61,482.37 and 240 each Piratical Dog Pillow domestically valued at $3,513.28.

Mem. in Supp. of Def.'s Mot. for J. on the Pleadings exhibit 1.

## II.  DISCUSSION

Defendant argues that "[b]ecause Customs determined that CBB's merchandise was clearly piratical and subsequently seized it, the statutes and regulations related to seized goods now apply to CBB's merchandise." Def.'s Mem. 7.  Defendant submits that, as a consequence, "CBB's claim before this Court should be dismissed because the Court cannot grant CBB the relief it seeks in its complaint." *Id.*  Defendant maintains that even though "it is undisputed that this Court has jurisdiction over protests of most deemed exclusions . . . the only relief CBB could obtain . . . is the release of its merchandise *from a deemed exclusion*," which the government contends "would be ineffective because CBB's goods were seized." *Id.* at 8.

As a second ground for dismissal, defendant argues that "because CBB's merchandise has been seized, the underlying dispute in this action would require a determination upon the substantive law covering intellectual property and copyright protection, and counterfeit goods," which defendant views as an "issue" that is not an international trade law issue and, therefore, as one that "cannot be decided by this Court." *Id.* at 8-9 (citing *H & H Wholesale Servs., Inc. v. United States*, 30 CIT 689, 437 F. Supp. 2d 1348 (2006); *CDCOM (U.S.A.) Int'l Inc. v. United States*, 21 CIT 435, 963 F. Supp. 1214 (1997)).

For the reasons discussed below, the court concludes that the court has subject matter jurisdiction over this action and that the court's ability to order relief, if warranted, is precluded neither by the issuance of the Seizure Notice nor by the prospect that adjudication of plaintiff's claim will involve the application of copyright law.  Defendant's Rule 12(c) motion, therefore, must be denied.

A.  The Court Has Subject Matter Jurisdiction over this Action

Although defendant does not seek dismissal on jurisdictional grounds, this action must not proceed unless it is determined that plaintiff's claim falls within the subject matter jurisdiction of this court, which has jurisdiction over "any civil action commenced to contest the denial of a protest . . . under section 515 of the Tariff Act of 1930."  Customs Courts Act of 1980 ("Customs Courts Act"), § 201, 28 U.S.C. § 1581(a) (2006); Tariff Act of 1930 ("Tariff Act"), § 515, 19 U.S.C. § 1515 (2006).  Plaintiff's claim arises under section 515 and also under section 499(c) of the Tariff Act, which applies "[e]xcept in the case of merchandise with respect to which the determination of admissibility is vested in an agency other than the Customs Service . . . ."  19 U.S.C. § 1499(c).  According to the submissions of both parties, the determination of admissibility of plaintiff's merchandise turns on the question of whether copyright violations occurred upon importation, a determination not vested in any agency other than Customs.  Under section 499(c)(5), a protest may be filed to contest what may be termed a "deemed exclusion" of merchandise, *i.e.*, when Customs fails "to make a final determination with respect to the admissibility of detained merchandise within 30 days after the merchandise has been presented for customs examination, or such longer period if specifically authorized by law . . . ."  *Id.* § 1499(c)(5)(A).  Customs is deemed to have denied such a protest "under section 515" when it takes no action within thirty days of the date the protest is filed.  *Id.* § 1499(c)(5)(B) (citing 28 U.S.C. § 1581(a)).

Salient facts gathered from the pleadings, which defendant does not deny, show that both a deemed exclusion and a deemed protest denial occurred in this case.  The merchandise was

submitted for examination in September 2007, compl. ¶ 13, and Customs failed to reach an admissibility decision within the subsequent thirty days, *id.* ¶ 3. As a result, a deemed exclusion occurred in October 2007. *See* 19 U.S.C. § 1499(c)(5)(A). CBB timely filed a protest of the deemed exclusion on November 19, 2010, compl. ¶ 19, and the protest ripened into a deemed denial on December 20, 2010, *id.* ¶ 20. *See* 19 U.S.C. § 1499(c)(5)(B). This action, commenced the day after the deemed denial, *see* Summons, falls within the jurisdiction granted to this Court granted by 28 U.S.C. § 1581(a). Defendant appears to concede that subject matter jurisdiction exists over this action. *See* Def.'s Reply 4 (arguing that "while this Court does not have jurisdiction over a seizure, this Court does have jurisdiction to review a deemed exclusion of CBB's goods under 28 U.S.C. § 1581(a).").

B.  The Issuance of the Seizure Notice Is Not a Bar to the Court's Granting Any Relief that May Be Warranted in this Case

USCIT Rule 12(c) provides that a party may move for judgment on the pleadings "after the pleadings are closed    but early enough not to delay trial." USCIT Rule 12(c). In ruling upon a Rule 12(c) motion, the court reviews the pleadings under the same standard as it would a motion to dismiss under USCIT Rule 12(b) for failure to state a claim. *Forest Laboratories, Inc. v. United States*, 29 CIT 1401, 1402-03, 403 F. Supp. 2d 1348, 1349 (2005). In deciding a Rule 12(b) motion to dismiss that does not challenge the factual basis for the complainant's allegations, the court assumes all factual allegations to be true and draws all reasonable inferences in a plaintiff's favor. *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (setting forth the standard for determining subject matter jurisdiction); *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 & n.13 (Fed. Cir. 1993); *Gould, Inc. v. United States*, 935 F.2d

Court No. 10-00383	Page 7

1271, 1274 (Fed. Cir. 1991) (setting forth the standard under which the court evaluates a motion for failure to state a claim upon which relief can be granted).  Although a complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

  Under defendant's construction of the laws and regulations governing the merchandise at issue in this case, CBB can obtain no effective relief in the Court of International Trade because "release can only be secured at this point through a challenge to the seizure," over which this Court lacks jurisdiction.  Def.'s Mem. 3.  According to defendant, the only relief CBB could obtain on its challenge to the deemed protest denial is the release of the merchandise from a deemed exclusion, which, defendant argues, could not entail the court-ordered release of the seized merchandise.  *Id.* at 8.

  Defendant argues that "it is well settled that the Court of International Trade does not have jurisdiction over seizures" and, citing 28 U.S.C. § 1356 (2006), submits that only a district court has jurisdiction to review the seizure of merchandise.  Def.'s Mem. 4.  Defendant also cites section 596(c)(2)(C) of the Tariff Act, 19 U.S.C. § 1595a(c)(2)(C) (2006), under which merchandise may be seized and forfeited if "it is merchandise or packaging in which copyright . . . violations are involved . . . ."  Def.'s Mem. 5.  Further, defendant cites section 602 of Copyright Act of 1976, 17 U.S.C. § 602(a)(1) (2006), which provides that importation, without the authority of the copyright owner, of copies of a work that have been acquired outside the

Court No. 10-00383 Page 8

United States is an infringement of the copyright owner's exclusive right to distribute such copies and that any such articles are subject to seizure and forfeiture under the customs laws. Def.'s Mem. 5. Defendant also directs the court's attention to the Customs Regulations, under which a port director has authority to "seize any imported article which he determines is an infringing copy . . . of a copyrighted work protected by Customs." *Id.* (citing 19 C.F.R. § 133.42(c) (2010)).

The question presented is whether, as defendant contends, the action taken by Customs to seize the merchandise under the customs laws deprives the court of the power to order an effective remedy in this litigation such that the case must now be dismissed. Deciding this question requires the court to determine how sections 499(c) and 596(c) of the Tariff Act apply in the circumstances of this case, in which Customs issued the Seizure Notice under section 596(c) after judicial review of the deemed protest denial under section 499(c) had commenced and the court had thereby obtained subject matter jurisdiction over CBB's cause of action.[2]

Section 499(c) was added to the Tariff Act by the Customs Modernization Act, which was included as Title VI of the North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, 107 Stat. 2057, 2171. As explained in the report of the House Committee on Ways and Means accompanying the Customs Modernization Act ("House Report"), the purpose of section 499(c) is to "provide a carefully balanced structure which allows the Customs Service,

---

[2] The Seizure Notice does not comply with applicable regulations because it fails to identify, by number or otherwise, the entry pertaining to the imported merchandise. *See* 19 C.F.R. § 162.31(b)(3)(ii) (2010) (requiring seizure notices to include the "identity of each entry, if specific entries are involved"). In ruling on defendant's motion, the court need not, and does not, decide the question of whether the Seizure Notice is invalidated by this regulatory violation.

in the first instance, a minimum of 60 days in which to determine whether merchandise initially detained shall be excluded from entry or seized and forfeited if otherwise authorized under other provisions of law." H.R. Rep. No. 103-361, pt. 1, at 111-12 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 2552, 2659 ("*House Rept.*"). It is apparent that the House Report, in mentioning a "minimum" of 60 days, refers to the period following presentation of the merchandise for examination as established by paragraph (A) of section 499(c)(5), which is thirty days "or such longer period if specifically authorized by law," together with the thirty-day period following the filing of the protest as established by paragraph (B) of the provision. Because no statutory provision authorized a longer period for examination of the merchandise at issue in this case, the facts as presented by the parties establish that Customs failed to make either an admissibility or a seizure determination within the 60-day period established by section 499(c)(5) and addressed in the House Report. The court, therefore, must determine the effect the issuance of the Seizure Notice, which occurred after the close of the 60-day period and after this case was commenced, will have on the court's ability to order relief. Specifically, the court considers whether, jurisdiction having attached, Customs is free to take actions affecting the status of the merchandise through proceedings initiated by the Seizure Notice and, if so, whether those proceedings would preclude any grant of relief to plaintiff that the court may order in the future.

It can be argued that section 499(c), which in paragraph (4) provides that "[i]f otherwise provided by law, detained merchandise may be seized and forfeited," when read together with section 596(c) and 17 U.S.C. § 602(a)(1), allows a seizure and forfeiture proceeding to go forward even where a judicial action arising out of the deemed exclusion already is underway by

the time Customs initiates a seizure proceeding by issuing a notice to the importer. However, in construing these provisions, the court also must consider the effect of paragraph (5)(C) of section 499(c), which requires in a defined circumstance that "the court shall grant the appropriate relief which may include, but is not limited to, an order to cancel the detention and release the merchandise." 19 U.S.C. § 1499(c)(5)(C). That circumstance is where, in a judicial proceeding challenging a deemed exclusion, Customs does not show "by a preponderance of the evidence that an admissibility determination has not been reached for good cause . . . ." *Id.* According to the House Report, "[d]uring judicial review of a detention, the Customs Service has, notwithstanding 28 U.S.C. § 2639 [providing that the burden of proving that the agency decision is not correct "shall rest upon the party challenging such decision"], the burden of proof in demonstrating that it has good cause for not reaching an admissibility decision." *House Rept.* 109-10, *as reprinted in* 1993 U.S.C.C.A.N. at 2659-60. The text of section 499(c)(5)(C) and the House Report language quoted above might be read to suggest that section 499(c)(5)(C) does not apply if Customs reaches an admissibility determination or seizes the merchandise while the judicial proceeding is ongoing. For two reasons, however, the court concludes to the contrary and decides that section 499(c)(5)(C) must apply in the circumstances of this case, in which Customs made no admissibility determination prior to commencement of this action.

      First, the court is required by statute to adjudicate *de novo* a claim arising under section 515 of the Tariff Act. *See* Customs Courts Act, § 301, 28 U.S.C. § 2640(a)(1) (2006) (directing the court to "make its determinations upon the basis of the record made before the court"). The ultimate determination as to whether merchandise is admissible is a conclusion of law, for which

findings of fact and, possibly, subordinate conclusions of law are required. Any such findings of fact are required by § 2640(a)(1) to be made *de novo* by the Court of International Trade, not Customs, and all conclusions of law are, of course, also the *de novo* responsibility of this Court. A determination of admissibility that the agency reaches after the jurisdiction of the Court of International Trade has attached to a plaintiff's cause of action contesting a deemed exclusion cannot be binding on this Court, for otherwise the agency's determination would be permitted to usurp the Court's judicial power and prevent the Court from fulfilling its judicial responsibility. Such a result would appear not to be in accord with § 2640(a)(1) and related statutory provisions affording judicial review.

      Second, the House Report speaks directly to the issue under consideration, clarifying that an agency decision on admissibility reached after judicial review has begun does not obviate the need for the good cause showing described in section 499(c)(5)(C) and does not relieve the Court of International Trade of the duty to grant the appropriate relief, including, possibly, an order to release the merchandise, if that showing is not made. The House Report explains that after the close of the 60-day period and the initiation of an action in this Court, "it is the Committee's intent that the burden of proof shall be on the Customs Service to show, by a preponderance of the evidence, good cause as to why an admissibility decision had not been made *prior to the time the importer commenced suit*." House Rept. 112, *as reprinted in* 1993 U.S.C.C.A.N. at 2662 (emphasis added). The House Report states, further, that "[o]nce an action has commenced before the CIT, the Customs Service shall immediately notify the Court if a decision to release, exclude or seize has been reached." *Id.* at 110, *as reprinted in* 1993 U.S.C.C.A.N. at 2660. The

House Report does not state or imply that any such decision the agency reaches is to be binding on the Court, nor does it state or imply that Customs is free to put that decision into effect without the Court's permission.  Reading this language to mean that Customs could effectuate its decision despite the Court's jurisdiction having attached would be irreconcilable with other language in the House Report and with the proper role of the Court in adjudicating the claim as Congress directed in section 499(c)(5)(C) and 28 U.S.C. § 2640(a)(1).

In arguing for dismissal, defendant distinguishes an agency decision to seize the merchandise from an agency decision to exclude the merchandise, arguing that "[b]ecause Customs determined that CBB's merchandise was clearly piratical and subsequently seized it, the statutes and regulations related to seized goods now apply to CBB's merchandise" and that "CBB's claim before this Court should be dismissed because the Court cannot grant CBB the relief it seeks in its complaint," *i.e.*, release of the merchandise. Def.'s Mem. 7.  Defendant's argument fails to address the consequences of the failure by Customs to make an admissibility determination prior to the institution of this litigation.  As section 499(c)(5)(C) directs, the court "shall grant the appropriate relief," which may include release of the merchandise, if the good cause showing contemplated by that provision is not made.  19 U.S.C. § 1499(c)(5)(C).  Under defendant's view of this case, the court would have no power to do what the statute directs it to do, regardless of whether Customs will be able to make the good cause showing, even though this case presents the very situation Congress addressed in section 499(c)(5)(C).  Defendant's theory of this case would hold that an action by an administrative agency, which in this case is the issuance of the Seizure Notice, somehow deprives this court of the ability to fulfill its judicial

responsibility as directed by statute.³  The court rejects this theory as contrary to the congressional intent underlying section 499(c) and inimical to the court's proper exercise of its jurisdiction.  While arguing that "Customs determined that CBB's merchandise was clearly piratical," Def.'s Mem. 7, defendant also fails to explain how Customs could be free to effectuate that determination when only the court, not the agency, is now empowered to reach definitive findings of fact and conclusions of law on the admissibility of the merchandise and fashion a remedy if plaintiff prevails.  In the circumstances of this case, the determination of admissibility and the determination of whether the merchandise is piratical are the same determination, and Customs is not free to usurp the court's power to make and effectuate that determination.

Defendant also bases its dismissal argument on a provision of the judicial code, 28 U.S.C. § 1356, which states that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of any seizure under any law of the United States on land or upon waters not within admiralty and maritime jurisdiction, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title."  28 U.S.C. § 1356 (citing Customs Courts Act, § 201, 28 U.S.C. § 1582 (2006)).  The provision in question, the historical antecedent of which was included within the Judiciary Act of 1789, is strictly a jurisdictional provision.⁴  It

---

³ Defendant argues that Customs "seized" the merchandise at issue on December 21, 2010, which was the day this case commenced.  Def.'s Mem. 2.  The Seizure Notice, however, was not issued until January 11, 2011.  Id.  The court fails to see how an internal agency decision to proceed with seizure, which did not ripen into a notice to the importer until twenty-one days later, could have the effect of precluding a remedy in this case.  See 19 C.F.R. § 162.31 (requiring notice of seizure to the importer).

⁴ Section 9 of the Judiciary Act of 1789 provided, inter alia, "[t]hat the district courts shall . . . have exclusive original cognizance of all seizures on land . . . and of all suits for
(continued...)

does not address the scope of relief available on a cause of action properly brought under another jurisdictional provision and, therefore, has no bearing on the issue raised by defendant's Rule 12(c) motion. In this case, plaintiff's cause of action arose under sections 515 and 499(c) of the Tariff Act as a result of the deemed exclusion and deemed protest denial. The cause of action did not arise as a result of the issuance of the Seizure Notice, an event that took place after plaintiff's cause of action arose and after the court's jurisdiction over that cause of action had attached.

In further support of its motion, defendant cites various cases in which the Court of International Trade found that it lacked jurisdiction over actions involving merchandise Customs claims to have seized. Def.'s Reply 11-13 (citing *H & H Wholesale*, 30 CIT 689, 437 F. Supp. 2d 1335 (2006); *Tempco Mktg. v. United States*, 21 CIT 191, 957 F. Supp. 1276 (1997); *Genii Trading Co. v. United, States*, 21 CIT 195 (1997); *Int'l Maven, Inc. v. McCauley*, 12 CIT 55, 678 F. Supp. 300 (1988)). None of these cases is on point. In none of them had the jurisdiction of the Court of International Trade attached prior to the agency actions taken to effect seizure of the merchandise.

For the various reasons discussed above, the court concludes that the court's jurisdiction has attached to plaintiff's claim and that Customs, through actions taken subsequent to the commencement of this litigation, may not usurp the court's power to decide this case and to order

---

⁴(...continued)
penalties and forfeitures incurred, under the laws of the United States." Judiciary Act of 1789, § 9, 1 Stat. 73. Whether 28 U.S.C. § 1356 (2006) has any current utility as a jurisdictional provision is unclear. 13d Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 3578, at 671-72 (3d ed. 2008) ("There is no discernible utility for 28 U.S.C.A. § 1356, and the provision should be repealed.").

an appropriate remedy.  As a result, Customs is not free to take actions affecting the status or disposition of the merchandise at issue in this case, either through proceedings initiated by the Seizure Notice or otherwise, for such actions have the potential to deprive the court of the ability to order a remedy, contrary to congressional intent.  The issuance of the Seizure Notice, which took place after this case was brought and the court's jurisdiction over the claim attached, is no bar to the future ability of the court to order a remedy to which plaintiff ultimately may be entitled.

### C.  The Nature of the Claim, which Involves Issues of Copyright Law, Does Not Preclude Potential Relief In this Case

Defendant's final argument is also meritless.  Defendant argues that judgment on the pleadings is appropriate because to resolve this case the court would need to decide questions of copyright law that "cannot be decided by this Court."  Def.'s Mem. 9.  That this case presents issues of copyright law cannot defeat jurisdiction or preclude a remedy.  Defendant cites no binding authority under which the court could not decide this dispute on the merits, and nothing in sections 514, 515, or 499 of the Tariff Act contains the restriction on the court's powers that defendant supposes to exist.  Moreover, the power of the Court of International Trade to decide questions of intellectual property law has been implicitly recognized by the United States Court of Appeals for the Federal Circuit, which has upheld, in at least one instance, a decision of the Court of International Trade deciding questions of patent law.  *See Jazz Photo Corp. v. United States*, 439 F.3d 1344 (Fed. Cir. 2006).

### III. Conclusion and Order

Upon consideration of Defendant's Motion for Judgment on the Pleadings, the opposition thereto, and all proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that Defendant's Motion for Judgment on the Pleadings be, and hereby is, DENIED; and it is further

**ORDERED** that defendant shall take no action affecting the status or disposition of the merchandise that is the subject of this case, and shall take no action with the potential to affect the nature or scope of any remedy that may be ordered in this case, without the court's approval.

                                                /s/ Timothy C. Stanceu
                                                Timothy C. Stanceu
                                                Judge

Dated: June 27, 2011
        New York, New York